IN THE UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


ANDREW RICHARD CUMMINS                                    PLAINTIFF

      v.                              Civil No.:  09-5173

SHERIFF KEITH FERGUSON, et al.                            DEFENDANTS


**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

     Plaintiff, Andrew Richard Cummins, filed this civil rights action pursuant to the

provisions of 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis.*

     During his incarceration in the Benton County Detention Center, Plaintiff maintains

his constitutional rights were violated in the following ways:  (1) he was denied adequate

medical care; (2) excessive force was used against him on July 20, 2009; and (3) he was

denied access to the courts.  Plaintiff names as Defendants:  Sheriff Keith Ferguson; Captain

Robert Holly; Dr. Huskins; Sergeant Torres; Sergeant Frye; Corporal Grant; Deputy

Simmons; Deputy Gully; and Deputy Gunther.

     A motion for partial summary judgment has been filed on behalf of Defendants.

(Doc. 41).  Defendants seek summary judgment in their favor on the denial of adequate

medical care claim and the denial of access to the courts claim.

     A response (Doc. 45) to the summary judgment motion was filed by Plaintiff.  At his

request (Doc. 49), a questionnaire was also propounded to assist him in responding to the

summary judgment motion.  Plaintiff filed a timely response (Doc. 53) to the questionnaire.

The motion is now ready for decision.

AO72A
(Rev. 8/82)

**1.  Background**

As mentioned above, Defendants have moved for summary judgment on two of the claims at issue in this case.  The facts pertinent to each claim will be set forth below.

**(A).  Medical Care Claim**

Plaintiff was booked into the Benton County Detention Center (BCDC) on June 10, 2009, on pending criminal charges.  *Plaintiff's Response* (Doc. 53) at ¶ 1 (hereinafter *Plff's Resp.*).  The summary judgment materials do not indicate the date of Plaintiff' transfer to the Arkansas Department of Correction.  However, the last treatment note contained in the jail medical file is dated September 28, 2009, as is the last medical request submitted by Plaintiff.  *Defendants' Exhibits* (hereinafter *Defts' Ex.*) 2 & 3(B).  The medication logs go through September 30th.  *Defts' Ex.* 6(B).

As part of the booking process, Plaintiff completed a medical questionnaire and stated that he was currently taking tramadol, Flexeril, antacid, ranitidine (Zantac), Prozac and Seroquel.  *Id.* at ¶ 2.  He also stated that he had false teeth, degenerative disk disease, acid reflux, and that he was allergic to citric acid, tomatoes, and oranges due to acid reflux.  *Id.*  Plaintiff did not bring any medication with him to the BCDC.  *Plff's Resp.* at ¶ 4(A).

He indicated he needed Zantac because he had acid reflux disease; he was bipolar and needed Prozac and Seroquel; he had Chronic Obstructive Pulmonary Disease (COPD) and needed an albuterol inhaler; and that he had degenerative disk disease and needed tramadol and Flexeril.  *Id.* at ¶ 3(A).  The nurse noted that some medications were ordered.  *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 3(A) at pg. 1.  The medication logs show Plaintiff began receiving a liquid antacid, an inhaler, and acetaminophen that day.  *Defts' Ex.* 6(A) at pg.1.

2

Dr. Huskins examined Plaintiff on June 12, 2009 for reflux (dyspepsia), back pain, anxiety (nerves), and cough. *Defts' Ex.* 2 at pg. 10; *Defts' Ex.* 7 at pgs. 2-3. Dr. Huskins noted the back exam was negative and Plaintiff's affect[1] was good. *Id.* Plaintiff was prescribed Zantac and his medical records were ordered. *Id.* Dr. Huskins concluded that Plaintiff was doing well at the time and did not need to be immediately placed on psychotropic medication. *Id.* Instead, the decision was made to request Plaintiff' records. *Id.*

According to Plaintiff, the back examination consisted of Dr. Huskins moving Plaintiff's legs in circles from the knee down. *Plff's Resp.* at ¶ 5(A). With respect to Dr. Huskins' decision that psychotropic medication was not needed, Plaintiff states that Dr. Huskins is a general practitioner and Plaintiff is unaware of his mental health qualifications. *Id.* at ¶ 5(B).

The BCDC uses a single form for the inmates to submit grievances, requests, and medical requests. *See e.g., Defts' Ex.* 3(A) at page 1. The inmates are directed to circle the word grievance, request, or medical when they submit the document. During his incarceration at the BCDC, Plaintiff submitted numerous medical requests. *Defts' Ex.* 3(A) & 3(B). The requests and responses to them were as follows:

On June 17th, Plaintiff requested Prozac and Seroquel because he had bipolar disorder. *Plff's Resp.* at ¶ 6;

On June 20th, Plaintiff submitted a medical request because of athlete's foot. *Id.* at ¶ 7(A). Plaintiff was seen by the doctor on June 22nd. *Defts' Ex.* 2 at pg. 11; *Defts' Ex.* 7 at pg. 4. Plaintiff was prescribed antifungal cream for his feet. *Id.* Dr. Huskins concluded the range of motion in Plaintiff's back was

---

[1] In the context of a mental health examination, the term affect refers to "[a] pattern of observable behaviors that is the expression of a subjectively experienced feeling state (emotion). Common examples of affect are sadness, elation, and anger." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000), Appendix C at pg 819.

3

intact and prescribed Tylenol. *Id.* Dr. Huskins also noted Plaintiff's affect was good. *Id.* However, according to Plaintiff, he informed Dr. Huskins of his "long mental health history and [his] symptoms at that time." *Plff's Resp.* at ¶ 7(C). Dr. Huskins prescribed Prozac (fluoxetine), an anti-depressant. *Id.*

On June 29th, Plaintiff submitted a medical request stating that he was bipolar and schizophrenic and took Prozac 40mg and Seroquel 400 mg. *Defts' Ex.* 3A at pg. 4; *Plff's Resp.* at ¶ 8 (without knowledge to agree or disagree);

On July 1st, Plaintiff submitted another medical request complaining of degenerative disk disease, pain in his back, neck, and knees, and headaches. *Defts' Ex.* 3A at pg. 5; *Plff's Resp.* at ¶ 9(A)(without knowledge to agree or disagree). He stated that he was taking tramadol and Flexeril. *Id.* Plaintiff was seen by Dr. Huskins that day. *Defts' Ex.* 2 at pg. 12; *Defts' Ex.* 7 at pg. 5; *Plff's Resp.* at ¶9(B). Dr. Huskins noted, "Affect good. Continue medication. Record Pending." *Id.*

On July 7th, Plaintiff submitted a medical request for foot cream, Seroquel, bed rest, and pain pills. *Defts' Ex.* 3A at pg. 6; *Plff's Resp.* at ¶ 10 (without knowledge to agree or disagree). He stated that his degenerative disk disease was playing havoc on his back because the metal benches were causing headaches and neck and back pain. *Id.* The nurse responded that medications for his back and feet were ordered and that the doctor had asked for Plaintiff's records. *Id.*

On July 16th, Plaintiff submitted a medical request stating that he had been getting two pills of Tylenol, four times a day, for his degenerative disk disease, but the jail pharmacy had ran out. *Defts' Ex.* 3A at pg. 7; *Plff's Resp.* at ¶ 12 (without knowledge to agree or disagree). Plaintiff stated that he also took Seroquel but that he had not received any. *Id.* On July 20th, Dr. Huskins examined Plaintiff for neck pain and back pain and prescribed Tylenol. *Defts' Ex.* 2 at pg. 2; *Defts' Ex.* 7 at pg. 6; *Plff's Ex.* at ¶ 13. Plaintiff did not complain to the doctor about depression, anxiety, or any other mental problems during this visit. *Id.* Plaintiff states he had gone forty days without his mental health medication by this time. *Plff's Resp.* at ¶ 13. He said "[e]ven retards at some point figure they won't get help & quit asking." *Id.*

On July 21st, Plaintiff submitted a grievance stating that he had been diagnosed bipolar and schizophrenic, and that he had been taking Seroquel, but he was being denied the medication at the jail. *Plff's Resp.* at ¶ 14. Captain Holly responded, "The doctor makes all medical decisions." *Id.*

On July 21st, Plaintiff submitted a medical request because his wrists,

shoulders, neck, back, and legs hurt after he was beaten.  *Defts' Ex.* 3A at pg. 8; *Plff's Resp.* at ¶ 15(A) (without knowledge to agree or disagree).  Plaintiff stated he needed pain pills, muscle relaxers, and maybe anti-inflammatories. *Id.*  Plaintiff was seen by Dr. Huskins on July 22nd for "aches all over." *Defts' Ex.* 2 at pg. 13; *Defts' Ex.* 7 at pg. 6; *Plff's Resp.* at ¶ 15(B).  He noted, "Range of motion, affect, neck, back, arms, legs symmetrical."  *Id.*  Aleve was prescribed.  *Id.*

On July 22nd, Plaintiff submitted a medical request stating that he was bipolar and schizophrenic and he was not getting enough Seroquel or Prozac.  *Defts' Ex.* 3A at pg. 9.   The response was: "You saw the Dr. today."  *Id.*

July 22nd, Plaintiff submitted a medical request stating he could not clear his throat and needed to see the doctor for expectorant.  The response was: "Saw Dr. 7/22."  *Defts' Ex.* 3A at pg. 10;

July 23rd, Plaintiff requested a Prozac refill.  He also stated he needed Seroquel.  The response was: "Will check with doctor about Prozac."  *Defts' Ex.* 3A at pg. 18;

July 24th, Plaintiff asked to speak to a mental-health expert,  In response, he was put on the list to see the doctor.  *Defts' Ex.* 3(A) at pg. 12;

July 24th, Plaintiff asked for a refill on his Prozac.  The response was: "Prozac re-ordered." *Defts' Ex.* 3A at pg. 13;

July 26th, Plaintiff submitted a medical request stating that his prescription for ranitidine was about to expire and that he had been diagnosed with bipolar schizophrenia and needed Seroquel.  The response was, "Will talk to Dr. about meds."  *Defts' Ex.* 3A at pg. 14;

July 27th, Plaintiff was seen for back pain and a cough. Dr. Huskins noted, "No change.  Repeat records request."   Prozac was prescribed for another thirty days.  *Defts' Ex.* 2 at pg. 14 and *Defts' Ex.* 7 at pg. 6;

July 28th, Plaintiff submitted a request stating that he "need[ed his] Seroquel" and was "a behavior problem due to [his] lack of medication."  *Defts' Ex.* 3A at pgs. 16-17.  He provided a list of clinics he had been seen at and prescribed psychotropic medication.  *Id.*  The response was: "thanks for the information." *Id.* at pg. 16;

July 29th, Plaintiff was seen by the doctor and given Tylenol and cough medicine for a cold.  *Defts' Ex.* 2 at pg 3; *Defts' Ex.* 7 at pg. 6;

Plaintiff was seen by the doctor three times between July 22nd and August 3rd. However, the exact dates are not clear from doctor's chart. The third visit was for a refill the Zantac (ranitidine) for his stomach and Mellaril was prescribed after Dr. Huskins reviewed Plaintiff's past medical records. *Defts' Ex.* 7 pg. 6;

August 2nd, Plaintiff requested a refill on his inhaler and complained that his pain pills kept running out. The response was: "inhaler reordered. Pain med is not a continuous. It is stopped after a few days and reordered as needed." *Defts' Ex.* 3A at pg. 18;

August 5th, Plaintiff submitted a medical request complaining that he was not receiving a high enough dose of Seroquel. Dr. Huskins saw Plaintiff on August 7th and increased the dosage of Mellaril (thioridazine). *Defts' Ex.* 2 at pg. 4 and *Defts' Ex.* 7 at pg. 830.

August 8th, Plaintiff requested a higher dosage of Prozac. The response was: "The Dr. increased the dose of your thioridazine yesterday." *Defts' Ex.* 3A at page 20;

August 8th, Plaintiff asked to see a mental-health specialist. The response was that the jail did not have a mental-health specialist. *Defts' Ex.* 3A at page 21.

August 10th, Plaintiff submitted another request to see a mental-health specialist. He also complained that he was not receiving the correct dose of psychotropic medication. The response was for him to write a medical request. *Defts' Ex.* 3A at page 22;

August 10th, Plaintiff asked for tramadol and Flexeril for his degenerative disk disease because the Tylenol was not working. In response, he was put on the list to see the doctor. *Defts. Ex.* 3A at pg. 23;

August 11th, Plaintiff submitted a grievance complaining about not being taken to a mental-health specialist and simply being told that the jail did not have one. He complained that he was bipolar, schizophrenic, and had anxiety, but his medication dosages were not correct. Captain Holly responded that "the doctor makes all medical decisions." *Defts' Ex.* 4 at page 14;

August 15th, Plaintiff asked for more athlete's foot cream. He was put on the list to see the doctor. *Defts' Ex.* 3A at page 25;

August 15th, Plaintiff submitted a medical request complaining he was not

receiving enough Thorazine and Seroquel.  In response, he was put on the list to see the doctor.  *Defts' Ex.* 3B at pg 1;

August 16th, Plaintiff asked to keep his mat because the Tylenol was not helping the pain from his degenerative disk disease and he needed to lie down on something other than steel.  He was put on the list to see the doctor.  *Defts' Ex.* 3B at pg. 3.

August 16th, Plaintiff submitted a grievance stating that, per the American Civil Liberties Union (ACLU) lawsuits, being in constant pain could constitute serious medical need, even if the failure to treat it does not make it worse.  Captain Holly responded that he would approve Plaintiff to keep his mattress during the day.  *Defts' Ex.* 4 at pg. 20;

August 16th, Plaintiff submitted both a medical request and a grievance stating that no one had asked him during booking if he had mental-health issues, there was no mental-health staff, and his medication had been altered without supervision.  He was put on the list to see the doctor.  Captain Holly responded to the grievance stating that Plaintiff had been asked about this at booking and that the doctor makes all the medical decisions.  Plaintiff was seen by the doctor on August 17th and prescribed Motrin. *Defts' Ex.* 3B at pg. 2; *Defts' Ex.* 4 at pg. 21; *Defts' Ex.* 2 at pg. 4; *Defts' Ex.* 7 at pg. 9;

August 20th, Plaintiff submitted a medical request stating that he was currently on 50 mg of thioridazine (Mellaril) per day, but the Seroquel worked better.  Plaintiff was seen by the doctor on August 21st and the dosages of psychotropic medication were reviewed. *Defts' Ex.* 3B at pg. 4; *Defts' Ex.* 2 at pg, 4; *Defts' Ex.* 7 at pg 9;

August 25th, Plaintiff asked for a refill of his rantidine (Zantac) prescription; *Defts' Ex.* 3B at page 5;

August 25th, Plaintiff complained the he was still hearing voices that sounded like someone calling his name.  He was seen by the doctor on the 27th and the Mellaril dosage was increased.  *Defts' Ex.* 3B at pg. 6; *Defts' Ex.* 7 at pg. 14;

August 26th, Plaintiff requested a refill of his Zantac.  The response was that it had been ordered. *Defts. Ex.* 3A at pg. 7;

August 27th, Plaintiff submitted a medical request complaining his stomach was acting up.  The nurse responded:  "med was reordered.  Will be here 8/28."  *Defts' Ex.* 3B at pg. 8;

August 27th, Plaintiff requested something for dandruff.  The nurse responded: "Sorry, we don't have anything for dandruff."  *Defts' Ex.* 3B at pg. 9;

August 28th, Plaintiff asked for a refill on his inhaler because it was getting low.  The response was that it would be reordered.  *Defts' Ex.* 3B at page 10;

August 28th, Plaintiff submitted a medical request because his ibuprofen and Motrin were about to run out.  The medication was ordered.  *Defts' Ex.* 3B at pg. 11;

August 30th, Plaintiff requested something for dry, flaky skin, and stated that his grandfather had psoriasis.  He was seen by Dr. Huskins on September 2nd.  Hydrocortisone cream was prescribed because the rash looked "atopic or allergic."  *Defts' Ex.* 3B at page 12;

September 3rd, Plaintiff complained of mood swings and depression.  Plaintiff was seen by Dr. Huskins and the Prozac dosage was increased.  *Defts' Ex.* 3B at pg. 13; *Defts' Ex.* 2 at pg. 6; *Defts' Ex.* 7 at pg. 10;

September 9th, Plaintiff requested a refill of ibuprofen.  It was ordered by the nurse.  *Defts' Ex* 3B at page 14;

September 14th, Plaintiff asked for a refill of thioridazine (Mellaril).  A refill was ordered.  *Defts' Ex.* 3B at page 15;

September 14th, Plaintiff submitted a medical request complaining he still had red, itchy, scaly patches on his head and face.  He was seen by the doctor on September 16th and prescribed hydrocortisone cream.  *Defts' Ex.*  3B at pg. 16; *Defts' Ex.* 2 at pg. 6; *Defts' Ex.* 7 at pg. 10;

September 21st, Plaintiff asked for a refill of ibuprofen for pain.  The response was: "Andrew, I made that sheet out on 9/21.  You should be getting it." *Defts' Ex.* 3B at pg. 18;

September 23rd, Plaintiff requested a couple of blankets to take the pressure off his lower back because of degenerative disk disease.  The nurse responded that she would show the request to the doctor.  *Defts' Ex.* 4 at pg. 24;

September 24th, Plaintiff asked for a refill of ranitidine.  The nurse responded: "Will ask MD on Mon." *Defts' Ex.* 3B at page 19;

September 25th, Plaintiff submitted a medical request for an extra mat or

8

blanket.  The nurse responded that Plaintiff's request from September 23rd had been shown to the doctor but he did not order an extra blanket.  *Defts' Ex.* 3B at pg. 20;

September 25, 2009, Plaintiff asked for a refill of ranitidine.  The nurse responded that she would ask the doctor.  *Defts' Ex.* 3B at pg. 21.  Dr. Huskins reordered the ranitidine on September 28th.  *Defts' Ex.* 2 at pg. 7; *Defts' Ex.* 7 at pg. 10.

The jail's medication logs show that, during Plaintiff's time in the BCDC, he was given ibuprofen (from 8/17 to 9/20 & 9/22 to 9/30), ranitidine (Zantac)(from 6/12 to 7/27, 7/29 to 8/19, & 8/28-9/30), fluoxetine (Prozac)(from 6/24 to 9/30), Ventolin (albuterol)(from 6/10 to 9/28 on an as needed basis), thioridazine (Mellaril)(from 8/3 to 8/20 & 8/26 to 9/30), hydrocortisone cream (from 9/2 to 9/6 & 9/16 to 9/18), acetaminophen (6/10 to 6/17, 6/23 to 7/15, 7/17 to 7/22, 7/27 to 8/1, 8/3 to 8/17), prednisone (from 8/13 to 8/17), tussin cough medication (from 7/27 to 8/1), naproxen sodium (Aleve)(from 7/22 to 7/27), antifungal cream (from 6/23 to 6/29 and 7/8 to 7/14), and liquid antacid (from 6/10 to 6/17).  *Defts' Exs.* 6A and 6B.  Plaintiff does not dispute his receipt of the listed medications but states his prescriptions were allowed to run out quite often.  *Plff's Resp.* at ¶¶ 26, 42, 65.  He also questions the reason it took until July 31st for the jail to request copies of his medical records.  *Id.* at ¶ 26.

With respect to his visits with Dr. Huskins, Plaintiff maintains the examinations were very brief, he was treated rudely, and he was not allowed time to discuss his symptoms or anything else.  *Plff's Resp.* at ¶¶ 5(A), 9(B), 15(B), 33, 45(B).  While he received "a lot of over the counter meds," Plaintiff states they "did not manage pain."  *Id.* at ¶ 51.  Plaintiff asserts that Dr. Huskins "only played at treating" his pain.  *Id.* at ¶ 66.  *See also* (Doc. 45) at

9

pg. 2.

Despite his long history of mental health treatment, Plaintiff asserts that his mental health was ignored as were his requests to be seen by a mental health expert. *Id.* at ¶¶ 15(B), 19, ¶ 23. Plaintiff indicates the Prozac did help with his problems but was not adequate. *Id.* at ¶ 20(A). In fact, he states his requests for treatment were largely ignored until after excessive force was used against him on July 20, and he informed medical personnel that he was going to file suit. (Doc. 45) at pg. 1.

### (B). Inadequate Law Library Claim

On August 5th, Plaintiff submitted a request to go to the law library. *Defts' Ex.* 4 at pg. 10. The request was approved. *Id.* Plaintiff indicates his requests to use the law library were "approved a lot" but he only went a "few times." *Id.* at ¶¶ 69(A) & 72.

Plaintiff sought access to the library in connection with the filing of this case. *Plff's Resp.* at ¶ 69(B). According to Plaintiff, the library materials consisted of approximately six books and were located in the booking area where there were a lot of distractions. *Id.* Plaintiff states he had no way of determining how long he was allowed to use the library materials because there were no clocks. *Id.* at ¶ 70(B).

On August 10, 2009, he submitted a grievance complaining that the law library was inadequate. *Plff's Resp.* at ¶ 70(A). He complained that there was no case law, the books that the library did have were out of date, research could not really be done, and he was not provided with enough time in the library. *Id.* Lt. Carter responded, "If you want to use the library, put in a request to do so." *Id.*                '

Plaintiff was able to send and receive legal mail while he was in the BCDC. *Resp.* at

10

¶ 78.  His attorney was allowed to visit and write him.  *Id.* at ¶ 79.

### 2.  Summary Judgement Standard

"Summary judgment is proper when no genuine issues of material fact exists and the moving party is entitled to judgment as a matter of law."  HDC Med, Inc. v. Minntech Corp., 474 F.3d 543, 546 (8th Cir. 2007).   In ruling on a summary judgment motion, the Court cannot weigh the evidence or resolve disputed  issues of fact in favor of the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

"[A] disputed fact alone will not defeat summary judgment, rather there must be a genuine issue of material fact.  To be material, a fact must affect the outcome of the suit under the governing law."  Torgerson v. City of Rochester, 2011 WL 2135636, *16 (8th Cir. June 1, 2011)(internal quotation marks and citations omitted).

### 3.  Discussion

### (A).  Denial of Medical Care Claim

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."   County of Sacramento v. Lewis, 523 U.S. 833, 851 (1998)(citation omitted).  "It is well established that deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment."   Langford v. Norris, 614 F.3d 445, 459 (8th Cir. 2010)(internal quotation marks and citation omitted). The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard.  See Butler v. Fletcher, 465 F.3d 340, 344 (8th Cir. 2006).

11

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  "Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing  about a substantial risk of serious harm to the inmate." Schaub v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011)(internal quotation marks and citation omitted).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)).

"This duty to provide medical care encompasses detainees' psychiatric needs." Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1187 (9th Cir. 2002)(citations omitted); see also Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir.1995)("Prison staff violate the Eighth Amendment if they are deliberately indifferent to an inmate's serious mental-health-care needs").  Obviously, a psychiatric or mental condition can constitute a serious medical need and pose a risk of serious harm. Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000).

In this case, when Plaintiff was booked in on June 10, 2009, a medical care questionnaire was completed. *Defts' Ex.* 2 at pg. 9.  On it, the following medical conditions were identified:  "skittso, bi polar, degenative disk disease, and acid reflux." *Id.*  Plaintiff

12

indicated he was taking, among other things, Prozac[2] and Seroquel.[3]

Although he was seen numerous times by Dr. Huskins, Plaintiff maintains he never received adequate care for his medical or psychiatric conditions.  It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation."  Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010)(internal quotation marks and citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment."  Id. Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference.  See Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir. 1990).

On June 10th, when Plaintiff was booked in, he signed a medical release authorizing the BCDC to obtain his medication list from Ozark Tri-County Healthcare, Dr. Shan, and the Ozark Medical Clinic.  Defts' Ex. 2 at pg. 16.  From notations on the authorization form, it appears there may have been some difficulty locating the medical care provider from the information provided by Plaintiff.  Id.  It is not clear when the efforts were made to find the

---

[2] Prozac® is the brand name for the drug fluoxetime.  It is used to treat depression, obsessive-compulsive disorder, some eating disorders, and panic attacks.  If someone suddenly stops taking fluoxetine, they may experience "withdrawal symptoms such as mood changes, irritability, agitation, dizziness, numbness or tingling in the hands or feet, anxiety, confusion, headache, tiredness, and difficulty falling asleep or staying asleep."  http://www.nlm.nih.gov/medlineplus/druginfo/meds/a689006.html (accessed 07/19/2011).

[3] Seroquel® is the brand name for the drug quetiapine.  It is "used to treat the symptoms of schizophrenia (a mental illness that causes disturbed or unusual thinking, loss of interest in life, and strong or inappropriate emotions.)"  The medication may also be used "to treat or prevent episodes of mania . . . or depression in patients with bipolar disorder." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a698019.html (accessed 07/19/2011).  A patient is not to stop taking quetiapine suddenly.  "If you suddenly stop taking questiapine,you may expereince withdrawal symptoms such as nausea, vomiting, and difficulty falling asleep or staying asleep."  Id.

13

correct medical care provider. *Id.* The only dates on the medical release form are June 10th, when it was signed, and July 31st, when it was faxed to Ozark Center. *Id.* The remaining notations are undated. *Id.* The records from Ozark Center were not received until July 31st. *Id.* at pg. 15. These records indicate Plaintiff had been written prescriptions for Seroquel in March and May of 2009. *Id.* at pg. 17.

The only medications Plaintiff was immediately started on were a liquid antacid, an inhaler, and acetaminophen. *Defts' Ex.* 2 at pg. 10. When Plaintiff was seen by Dr. Huskins on June 12th, Zantac was prescribed. The doctor noted Plaintiff's "affect" was good and, apparently based on this sole observation, concluded Plaintiff did not need to be placed on psychotropic medication at that time. There is no indication whether Dr. Huskins considered any possible side effects caused by the stoppage of the medications, Prozac and Seroquel, by virtue of the incarceration.

Throughout his incarceration, Plaintiff submitted numerous medical requests complaining that he needed prescriptions for the psychotropic medications or needed to have the dosages increased to provide adequate symptom control. He stated that the lack of medication was causing him to have behavior problems and he was hearing voices. He also submitted several requests asking to be seen by a mental health expert. At the same time, Plaintiff was voicing complaints about inadequate pain control for his degenerative disk disease.

On the record before me, I conclude there are genuine issues of material fact as to whether Defendants exhibited deliberate indifference to Plaintiff's serious medical needs. First, there was a significant delay in obtaining Plaintiff's medical records. Courts have held

14

that failure of a Defendant to take reasonable steps that will aid in obtaining necessary medical information can be the basis of a deliberate indifference finding.  See e.g., Coleman v. Wilson, 912 F. Supp. 1282, 1315 (E.D. Cal. 1995); Venus v. Goodman, 556 F. Supp. 514 (D.C. Wis. 1983).

Second, there is no indication that Dr. Huskins considered possible side effects caused by the abrupt stop of the psychotropic medications when Plaintiff was incarcerated.  Indeed, there is nothing to suggest Plaintiff's activities or behavior were monitored in anyway.

Third, Plaintiff indicated he has significant mental health problems having been diagnosed with schizophrenia and bi-polar disorder.  *Defts' Ex.* 2 pg. 9.  Plaintiff also indicated he was currently taking Prozac and Seroquel for these conditions.  Despite this, from the records before me, it appears Dr. Huskins' mental status examination was cursory at best consisting solely of noting that Plaintiff's affect was good.  A mental status examination should include descriptions of the patient's appearance and general behavior, level of consciousness and attentiveness, motor and speech activity, mood and affect, thought and perception, and attitude and insight.  http://www.ncbi.nlm.nih.gov/books/NBK320/ (accessed 7/19/2011).  It does not appear that Dr. Huskins considered referring Plaintiff to a mental health professional for a mental status examination.

Fourth, despite repeated requests from the Plaintiff stating that the medication he was receiving did not control his back pain, there is no indication any type of pain management plan was in place or that Dr. Huskins considered prescribing anything other than over the counter pain relief medications.

With respect to Sheriff Ferguson and Captain Holley, although supervisors cannot be

15

held liable on a theory of *respondeat superior*, they may be held liable if they knew the prisoner's "serious medical needs were not being adequately treated yet remain indifferent." Langford v. Norris, 614 F.3d 445, 460 (8th Cir. 2010)(citation omitted).   Captain Holly responded to at least two of Plaintiff's requests and grievances and therefore had actual knowledge of Plaintiff's serious medical needs and of his complaints of inadequate treatment. *See Plff's Resp.* at ¶ 14; *Defts' Ex.* 4 at pg. 14.

Nothing in the record before me indicates that Sheriff Ferguson had any knowledge regarding Plaintiff's medical and mental conditions or that he was aware of Plaintiff's complaints of inadequate treatment.   Therefore, there is no basis on which Sheriff Ferguson can be held liable on this claim.

### (B). Denial of Access to the Courts Claim

Detainees have no "freestanding right to law library access or trained legal assistance." Bourdon v. Loughren, 386 F.3d 88, 92 (2d Cir. 2004)(citation omitted).  Instead, "[i]nmates undeniably enjoy a constitutional right of access to the courts and the legal system." Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996)(citing Lewis v. Casey, 518 U.S. 343 (1996); Bounds v. Smith, 430 U.S. 817 (1997)).  The right of access requires the provision of "prisoners with adequate law libraries or adequate assistance from persons trained in the law,"   Bounds, 430 U.S. at 828, to challenge their criminal charges, convictions, and sentences directly or collaterally or to challenge the conditions of their confinement through civil rights actions, Casey, 518 U.S. at 351; see also Cody v. Weber, 256 F. 3d 764, 767-68 (8th Cir. 2001)("right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that

16

challenge the conditions of the inmate's confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court'")(quoting Casey, 518 U.S. at 354-55).

Defendants are entitled to summary judgment on this claim. First, Plaintiff was granted access to the law library on several occasions. The facts that he did not believe the library was adequate and his time was limited do not by themselves establish a constitutional violation. Bandy-Bey v. Crist, 578 F.3d 763, 765 (8th Cir. 2009)(limitation on amount of library time did not by itself demonstrate a denial of access to the courts); Hartsfield v. Nichols, 511 F.3d 826, 832 (8th Cir. 2008)(demonstrating that the law library or legal assistance provided was substandard in some sense does not establish a constitutional violation in the absence of actual injury).

Second, Plaintiff' claim fails because he suffered no actual injury. The right of access to the courts is not an abstract one and the inmate must "demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." Casey, 518 U.S. at 351; see also Hartsfield, 511 F.3d at 832 (Hartsfield failed to allege he was prevented from filing a complaint, or a filed complaint was dismissed for lack of legal adequacy. He only roughly and generally asserted that he was prevented from filing because he did not know what arguments to make. This claim is speculative and was properly dismissed); Klinger v. Department of Corrections, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic). Plaintiff did not miss any deadlines for filing documents with a court and was not prevented from filing a case or claim. *Plff's Resp.* at ¶ 69(A). There is

17

nothing in the summary judgment record to suggest his claims were dismissed for lack of legal adequacy or that he was in some manner prevented from filing an appeal, request for post-conviction relief, or a civil rights action.  In fact, he indicates he sought access to the library in order to file this civil rights case.  *Id.* at ¶ 69(B).

### 4.  Conclusion

For the reasons stated, I recommend that the motion for partial summary judgment (Doc. 41) be granted in part and denied in part.  Specifically, I recommend it be granted with respect to the denial of access to the courts claims.  This leaves for later resolution Plaintiff's denial of medical care claims and his excessive force claims.

**The parties have fourteen (14)  days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of August 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)